No. 101,684

S<small>TATE OF</small> K<small>ANSAS</small>, *Appellee*, v. D<small>OUGLAS</small> S. P<small>LUMMER</small>, *Appellant*.

(283 P.3d 202)

Opinion filed August 24, 2012.

*Michelle Davis*, of Kansas Appellate Defender Office, argued the cause and was on the brief for appellant.

*Thomas R. Stanton*, deputy district attorney, argued the cause, and *Keith E. Schroeder*, district attorney, and *Steve Six*, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

JOHNSON, J.: On direct appeal of his conviction for the aggravated robbery of a Target store employee, Douglas Plummer raised the issue of whether the district court committed reversible error by refusing to give the jury a lesser included offense instruction on the crime of simple theft. A panel of the Court of Appeals found that the refusal to give the theft instruction was reversible error and remanded the case to the district court for a new trial. *State v. Plummer*, 45 Kan. App. 2d 700, 251 P.3d 102 (2011). The State petitioned for our review of that decision, claiming that the Court of Appeals applied an incorrect standard of review and arguing that the particular facts of this case, as well as the skip rule, dictate an affirmance of the trial court's refusal to instruct on theft. Finding that the Court of Appeals reached the correct result, we affirm its decision to reverse and remand for a new trial.

## FACTUAL AND PROCEDURAL OVERVIEW

The alleged victim of the aggravated robbery was Tony Schwabuer, who at the time of the incident was performing his duties as security officer for the Target store where the crime occurred. Prior to the confrontation, the security officer had observed Plummer inside the store for over 2 hours, during which he took merchandise from the shelves in several locations. Some items were left in different locations throughout the store, but for many of the

items, Plummer removed the tags or packaging and stuffed them into his pockets or into a backpack he had picked up in the store for that purpose.

The security officer waited to take any action until Plummer had passed the checkout cash registers without paying. Between the two sets of doors at the front of the store, the security officer made contact with Plummer, identified himself as a store employee, explained that he was aware of the stolen items, requested that Plummer stop, and then placed his hand on Plummer's shoulder. Plummer allegedly reacted by swinging at the security officer, and a scuffle ensued. The engaged combatants made their way out of the store and onto the parking lot, where other Target employees came to assist the security officer in subduing Plummer. Both Plummer and the security officer sustained scratches and scrapes as a result of the altercation.

Plummer was charged with aggravated robbery under the theory that Plummer had taken Target's property from the security officer by using force that caused bodily injury. At the close of the State's case, Plummer filed a motion for judgment of acquittal on the aggravated robbery charge. He argued that he did not obtain possession of any of the items of merchandise through the use of violent force, as required for an aggravated robbery conviction under K.S.A. 21-3427. Rather, Plummer asserted that the physical contact with the security officer occurred *after* he had peaceably obtained possession of the items, *i.e.*, he only used force to resist arrest for the completed theft. The district court denied the motion because of its belief that Plummer had not completed the theft while he was still on Target property. The trial court opined that support for its ruling could be found in *State v. Bateson*, 266 Kan. 238, 970 P.2d 1000 (1998), *State v. Moore*, 269 Kan. 27, 4 P.3d 1141 (2000), and *Steward v. State*, No. 95,994, 2007 WL 959623 (Kan. App. 2007) (unpublished opinion).

During the jury instructions conference, defense counsel requested instructions on the lesser included offenses of robbery and theft. The court granted the request for the robbery instruction but refused to instruct the jury on theft. Again, the district court concluded that Plummer, at the time of the physical altercation

with the security officer, had not completed the requisite taking of the property to support the theft charge. Ultimately, the jury convicted Plummer of aggravated robbery, and the court sentenced him to 233 months in prison.

Plummer directly appealed to the Court of Appeals, and the panel concluded that the district court had erred in refusing to give the requested theft instruction. Relying heavily on *State v. Saylor*, 228 Kan. 498, 500-01, 618 P.2d 1166 (1980), the panel determined that a jury could have concluded that the taking was complete before Plummer tangled with the security officer. *Plummer*, 45 Kan. App. 2d at 707-08. The panel specifically noted that the question of when a thief's taking of the victim's property was completed constitutes a factual determination to be made by the jury. 45 Kan. App. 2d at 711. Accordingly, the panel ordered reversal of the conviction and remand for a new trial.

The panel also addressed the State's claim that the skip rule precluded reversibility in this case. The Court of Appeals opined that the skip rule is not so much a hard and fast rule as it is a guideline for determining whether the defendant suffered any prejudice from the omission of a lesser included offense instruction. Applying the concept in this case, the panel observed that the jury's selection of aggravated robbery over the lesser included offense of robbery simply established that the jury believed that the security officer had sustained actual bodily injury in the physical confrontation with Plummer. That decision shed no light on how the jury would have decided the question of whether the theft was complete before the physical altercation commenced, *i.e.*, whether the jury would have convicted Plummer of theft in lieu of aggravated robbery, if given the choice. As such, the Court of Appeals found that the skip rule could not save the district court's instructional error in this case. 45 Kan. App. 2d at 711-12.

### STANDARDS OF REVIEW AND ANALYTICAL PROCESS

The State's petition for review suggests that the Court of Appeals applied an incorrect standard of review. The standard of review and analytical process applied by the panel is summarized in the opinion's first syllabus:

"When a criminal defendant has requested a jury instruction that the trial court declines to give, that failure is reviewed as a question of law. The appellate court gives no deference to the trial court's decision. A trial court has an obligation to instruct on any lesser included offenses supported in the evidence and must review that evidence in a light most favorable to the defendant for that purpose. An instruction should be given even if the evidence supporting that lesser offense is weak or inconclusive. If a jury might return a verdict for the defendant on the lesser offense, even though that outcome seems unlikely or remote, the trial court's failure to give the requested instruction creates reversible error." 45 Kan. App. 2d 700, Syl. ¶ 1.

The State does not favor us with an argument as to why any specific portion of the Court of Appeals' recitation is erroneous. Rather, the State simply contends that the correct standard for appellate review of the failure to give a requested lesser included offense instruction is whether the evidence, viewed in the light most favorable to the defendant, supported the instruction. Curiously, the State's proffered standard of review sounds quite similar to the Court of Appeals' statement that "[a] trial court has an obligation to instruct on any lesser included offenses supported in the evidence and must review that evidence in a light most favorable to the defendant for that purpose." 45 Kan. App. 2d 700, Syl. ¶ 1.

Nevertheless, we believe that neither the Court of Appeals nor the State recites a completely accurate description of the standard of review or the test for reversibility that should be applied when reviewing a district court's refusal to give a requested lesser included offense jury instruction. That shortcoming is certainly understandable, given that our appellate courts have not always been crystal clear or consistent in identifying standards of review or in distinguishing them from tests for reversibility when dealing with instruction issues. Although we discern that the imprecise standard of review statements in prior decisions likely had little effect on the outcome of those decisions, we will humbly endeavor to set forth an analytical framework with accompanying standards of review and tests for reversibility that might promote more consistency in the future.

Often, an appellate court's first inquiry focuses on reviewability, *i.e.*, whether the particular issue falls within the court's scope of review. For instance, the right of appeal is only a statutory right;

an appellate court only acquires such jurisdiction to entertain an appeal as is prescribed by statute. See *State v. Gill*, 287 Kan. 289, 294, 196 P.3d 369 (2008). Further, appellate courts ascribe to certain prudential rules of preservation, generally declining to consider issues which have not been raised before the trial court. See *State v. Warledo*, 286 Kan. 927, 938, 190 P.3d 937 (2008). In K.S.A. 22-3414(3), the legislature has set forth specific statutory provisions addressing the appeal of claims of error involving the giving or failing to give an instruction, including a lesser included offense instruction. That statute requires an appropriate and timely objection to the challenged instruction in order to avoid being constrained to only appealing clearly erroneous instructions. Here, that constraint is not applicable.

Next, the inquiry turns to a review of the merits of appellant's claim, commencing with a determination of whether the requested instruction was legally appropriate. For instance, a lesser included offense instruction would be inappropriate if the described lesser crime is not legally an included offense of the charged crime, *i.e.*, as a matter of law, a lesser included offense instruction must contain a lesser included offense. Moreover, an instruction must always fairly and accurately state the applicable law, and an instruction that does not do so would be legally infirm. Under this step, the appellate review is unlimited, as with all questions of law. See, *e.g.*, *Iron Horse Auto, Inc. v. Lititz Mut. Ins.*, 283 Kan. 834, 838-39, 156 P.3d 1221 (2007) (statutory interpretation and insurance contract interpretation are questions of law subject to unlimited review); see also *State v. Gallegos*, 286 Kan. 869, 872-73, 190 P.3d 226 (2008) (whether a crime is a lesser included offense is a question of law subject to unlimited review).

Next, even if the instruction is legally appropriate when viewed in isolation, it must be supported by the particular facts of the case at bar. For instance, pursuant to the language of K.S.A. 22-3414(3), a lesser included offense instruction is only required "where there is some evidence which would reasonably justify a conviction of some lesser included crime." Therefore, a district court does not err in refusing to give a lesser included offense instruction on a crime which is unsupported by the evidence in that particular case.

Such an inquiry is closely akin to the sufficiency of the evidence review frequently performed by appellate courts in criminal cases where " 'the standard of review is whether, after review of all the evidence, viewed in the light most favorable to the prosecution, the appellate court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt.' " *State v. McCaslin*, 291 Kan. 697, 710, 245 P.3d 1030 (2011) (quoting *State v. Drayton*, 285 Kan. 689, 710, 175 P.3d 861 [2008]). Of course, where the defendant has requested the lesser included offense instruction, the evidence should be viewed in the light most favorable to the defendant. See *State v. Jones*, 279 Kan. 395, Syl. ¶ 1, 109 P.3d 1158 (2005). But deference is given to the factual findings made below, in the sense that the appellate court generally will not reweigh the evidence or the credibility of witnesses. *State v. Hall*, 292 Kan. 841, 859, 257 P.3d 272 (2011).

If an instruction is legally appropriate and factually supported, a district court errs in refusing to grant a party's request to give the instruction. Where we part company with the Court of Appeals is when it suggests that the trial court's failure to give such an instruction is structural error, *i.e.*, always reversible. Instead, we can discern no reason to foreclose the possibility that an appellate court might find the instructional error to be harmless under the facts and circumstances of a particular case. *Cf. Boldridge v. State*, 289 Kan. 618, Syl. ¶ 7, 215 P.3d 585 (2009) ("Structural error only occurs in very limited circumstances where errors defy analysis by harmless-error standards because they affect the framework within which the trial proceeds."). Accordingly, we find that it is appropriate to move to the harmless error paradigm we recently set out in *State v. Ward*, 292 Kan. 541, 565, 256 P.3d 801 (2011) *cert. denied* 132 S. Ct. 1594 (2012):

"[B]efore a Kansas court can declare an error harmless it must determine the error did not affect a party's substantial rights, meaning it will not or did not affect the trial's outcome. The degree of certainty by which the court must be persuaded that the error did not affect the outcome of the trial will vary depending on whether the error implicates a right guaranteed by the United States Constitution. If it does, a Kansas court must be persuaded beyond a reasonable doubt that there was no impact on the trial's outcome, *i.e.*, there is no reasonable possibility that the error contributed to the verdict. If a right guaranteed by the United States

Constitution is not implicated, a Kansas court must be persuaded that there is no reasonable probability that the error will or did affect the outcome of the trial."

In summary, for instruction issues, the progression of analysis and corresponding standards of review on appeal are: (1) First, the appellate court should consider the reviewability of the issue from both jurisdiction and preservation viewpoints, exercising an unlimited standard of review; (2) next, the court should use an unlimited review to determine whether the instruction was legally appropriate; (3) then, the court should determine whether there was sufficient evidence, viewed in the light most favorable to the defendant or the requesting party, that would have supported the instruction; and (4) finally, if the district court erred, the appellate court must determine whether the error was harmless, utilizing the test and degree of certainty set forth in *Ward*.

## REFUSAL TO GIVE LESSER INCLUDED OFFENSE INSTRUCTION

The complaint/information charged Plummer with one count of aggravated robbery, in violation of K.S.A. 21-3427. The charging document specifically alleged that Plummer took merchandise from the person or presence of Tony Schwabuer by force or threat of bodily harm and inflicted bodily harm upon Schwabuer in the course of the described robbery.

The district court granted Plummer's request to instruct the jury on simple robbery as a lesser included offense. The difference between robbery and aggravated robbery in this case was the infliction-of-bodily harm element. In other words, a robbery conviction, in lieu of an aggravated robbery conviction, would mean that the jury did not believe that Plummer inflicted bodily harm on Schwabuer during the robbery. The issue before us was created by the district court's refusal to also give a lesser included offense instruction on theft, under K.S.A. 21-3701(a)(1), which is the obtaining or exerting unauthorized control over property with intent to deprive the owner permanently of the possession, use, or benefit of the owner's property.

As noted, the first inquiry in instruction issues is often a question of the applicable scope of review, *i.e.*, whether the appellant has preserved the issue for full appellate review. Here, however, the

State does not contend that Plummer's request for the theft instruction was noncompliant with K.S.A. 22-3414(3)'s preservation requirement, and we are not presented with a reviewability problem. Accordingly, we move to a full review of the merits.

The obvious legal challenge to the Court of Appeals' holding that the district court erred in refusing to give the theft instruction would be to contend that theft is not a lesser included offense of aggravated robbery. But the State does not make that argument, presumably because this court found to the contrary over a quarter of a century ago. In *State v. Long,* 234 Kan. 580, 590, 592, 675 P.2d 832 (1984), this court reviewed the respective elements of theft and robbery and observed that "the specific intent element required to prove theft is not required to establish the elements of robbery." Nevertheless, *Long* pointed out that the statute defining lesser included crimes encompassed a "lesser degree of the same crime." K.S.A. 21-3107(2)(a). After reviewing the nature of the crime of robbery and its relationship to the crime of larceny or theft, *Long* held that "for the purposes of K.S.A. 21-3107(2)(a) theft is a 'lesser degree of the same crime' which embraces robbery." 234 Kan. at 591-92. Moreover, we recently cited to *Long* for the holding that "theft is a lesser degree of larceny than robbery." *State v. Boyd,* 281 Kan. 70, 94, 127 P.3d 998 (2006). Consistent with that long-standing precedent, we hold that it was legally appropriate to give a theft instruction as a lesser included offense of aggravated robbery.

But as *Long* observed, whether this particular defendant was entitled to an instruction on theft "is a different question," because the duty to instruct on lesser crimes only arises "where there is evidence upon which the accused might reasonably be convicted of the lesser offense." 234 Kan. at 592. The debate over whether the theft instruction was factually appropriate in this case highlights the existence of some equivocation or inconsistency in our prior cases as to when a theft is deemed to be complete, *i.e.,* when a thief is considered to have successfully exerted or obtained unauthorized control over the owner's property. The Court of Appeals explained how that determination has been applied to differentiate between theft and robbery:

"In some circumstances, a criminal who starts out intending to be a thief may become a robber. If the thief's effort to obtain control of the property is immediately challenged or contested and he or she brandishes a weapon or resorts to the use of force to complete the taking, the crime becomes robbery or aggravated robbery. In differentiating theft and robbery, the Kansas Supreme Court has stated: '[W]e conclude a thief does not obtain the complete, independent and absolute possession and control of money or property adverse to the rights of the owner *where the taking is immediately resisted* by the owner before the thief can remove it from the premises or from the owner's presence.' (Emphasis added.) *Long*, 234 Kan. at 586. And, as was the case in *Long*, when the thief uses force to complete the taking, he or she has then become a robber. *Aldershof*, 220 Kan. at 800 (For robbery, 'the violence or intimidation must precede or be concomitant or contemporaneous with the taking.'). Conversely, if the thief has already exercised dominion over the property and uses force to flee or otherwise avoid apprehension, he or she has not committed robbery. 220 Kan. 798, Syl. ¶ 3 ('Robbery is not committed where the thief has gained peaceable possession of the property and uses no violence except to resist arrest or to effect his escape.')." *Plummer*, 45 Kan. App. 2d at 705-06.

The State contends that while Plummer was in the Target store, he could not have exerted unauthorized control over merchandise because every shopper is authorized to take an item off a store shelf and can even put it in the shopper's pocket. According to the State, "[t]he taking of the item does not occur until a person passes the point of sale and begins to exit the store." Curiously, the State's suggested test appears to support Plummer's position. He had bypassed the checkout cash registers and had gone through the first exit door before he was stopped by the security officer, so that under the State's definition, a taking had occurred before Plummer used any force, *i.e.*, the theft was completed.

Nevertheless, the State's suggestion that, as a matter of law, a customer cannot obtain the requisite dominion and control over property to effect a theft while still shopping inside a store is belied by some of our prior decisions. In *State v. Saylor*, 228 Kan. 498, 500-01, 618 P.2d 1166 (1980), we held that "where a customer in a self-service store conceals on his person, or in a box or receptacle, property of the store and has the requisite specific criminal intent, that customer has committed a theft." 228 Kan. at 500-01. The State's attempt to distinguish *Saylor* on this point is unavailing,

given our prior decision in *State v. Knowles*, 209 Kan. 676, 678, 498 P.2d 40 (1972).

In *Knowles*, a shopper was looking at a number of firearms that a clerk had placed on a counter. The shopper placed a gun under his coat and then in his pocket while still at the firearm counter. Another store clerk observed the shopper's activities and immediately confronted the shopper, confiscated the gun while still in the store's firearm department, and later called the police. In finding that the shopper was amenable to being convicted of a completed theft, *Knowles* declared: " 'Theft' under the present statute, unlike 'larceny' under the old, requires no asportation to complete the crime. All that is required is the (here unauthorized) control, coupled with the intent to deprive the owner permanently of his possession, etc." 209 Kan. at 678.

Those holdings would suggest that the focus should be on the level of control a customer is permitted to exercise over merchandise in a self-service store. As the State contends, customers are obviously authorized to possess merchandise while shopping for the purpose of presenting items for payment and completion of a sale. However, the store does not grant its customers the authority to remove items from their packaging and/or to conceal them to facilitate their removal from the store without paying for them. Such acts constitute the exertion of *unauthorized* control over the property, which, when coupled with the requisite mens rea, completes a theft.

Granted, the State can point to some language in our prior cases to support its position that Plummer had to leave the Target store and perhaps the parking lot to complete the theft. Generally, our cases have agreed that the test for determining whether a defendant has committed a theft or a robbery "should be whether or not the taking of the property has been completed at the time the force or threat is used by the defendant." *State v. Aldershof*, 220 Kan. 798, 803, 556 P.2d 371 (1976). But the application of that test has not always been consistent, as we observed back in 1984:

"Prior Kansas cases are not in accord with one another and as such do not provide much assistance in determining when a taking is completed. Some of the cases imply a taking is not complete until the property has been removed from

the premises of the owner, whereas others indicate the taking is accomplished at the moment the thief, with the intent to steal, removes the property from its customary location." *Long*, 234 Kan. at 583.

Unfortunately, since *Long*, our cases have continued to use language that could suggest that the completion of a theft entails an asportation of the stolen goods off of the owner's property. In *State v. Dean*, 250 Kan. 257, 260, 824 P.2d 978 (1992), this court recited *Long*'s conclusion that "a thief does not obtain complete independent and absolute possession and control of property adverse to the rights of the owner when the taking is immediately resisted by the owner *before the thief can remove it from the premises or from the owner's presence.*" (Emphasis added.) But the facts in *Dean* suggest that the result was compelled by the timing of the taking, rather than the physical location of the defendant.

The incident in *Dean* occurred in a bygone era when gasoline station owners provided full service at the pump. Dean ordered 3 dollars worth of gasoline, and the owner proceeded to pump it into Dean's vehicle. When the owner returned to the driver's window to collect the money, Dean said he did not have the money and made a gesture as if he had a weapon. The owner, believing he was about to be shot, jumped away from the vehicle. Dean then drove away from the station. The owner called the police, and Dean was later apprehended.

It would appear that the determination in *Dean* that the facts supported a robbery charge, rather than a theft charge, should have been more straightforward than struggling over the level of dominion and control that Dean had exerted on the gasoline in his vehicle. Robbery requires that the "taking of property" be accomplished "by force or by threat of bodily harm." K.S.A. 21-3426. Here, the station owner intentionally and voluntarily pumped the gasoline into Dean's automobile, so that Dean was authorized to possess the property at that time, *i.e.*, Dean had not obtained *unauthorized* control over the property as required to complete a theft. Moreover, Dean had not taken anything by force or threat at that point. It was only when Dean threatened the station owner, rather than hand him 3 dollars, that a "taking" took place and Dean's control over the gasoline became unauthorized. The temporal con-

currence of the taking and the threat of bodily harm is what made the incident fit the statutory definition of a robbery when it did, not that the incident occurred before Dean crossed the station's boundary line.

But we are not called upon in this case to determine whether the evidence was sufficient to support the aggravated robbery conviction. Rather, the question is whether "there is some evidence which would reasonably justify a conviction" for theft as a lesser included crime. K.S.A. 22-3414(3). We have no problem finding that Plummer's acts of removing items from their packaging, concealing the merchandise in pockets and a backpack, bypassing the checkout cash registers, and passing through the first exit door were sufficient for a jury to make the factual determination that the theft was completed by the time that Plummer used force on the security officer. See *Aldershof*, 220 Kan. at 803 (whether taking complete before force or threat used by defendant must be determined from factual circumstances in each case). Accordingly, the instruction on theft as a lesser included offense was legally and factually appropriate, and the district court erred in refusing to give the instruction.

The final step is to assess whether the error was harmless. Plummer does not argue that the failure to give the lesser included offense instruction violated a constitutional right. Therefore, the error is reversible only if we determine that there is a "reasonable probability that the error will or did affect the outcome of the trial in light of the entire record." *Ward*, 292 Kan. at 569. As previously noted, the facts here comport with the State's own definition of a completed theft, *i.e.*, Plummer had passed the point of sale and was exiting the store. Moreover, the record before us presents ample support for viewing this as a shoplifting case that only escalated into a physical altercation when the security officer attempted to prevent the thief's escape. If the jury knew it could convict Plummer of theft, there is a reasonable probability it would have done so. Accordingly, we cannot declare the error to be harmless.

## The Skip Rule

Alternatively, the State argues that, notwithstanding any duty to

give a lesser included offense instruction on theft, there was no error in this case because of the skip rule. We have described the skip rule as follows: " 'When a lesser included offense has been the subject of an instruction, and the jury convicts of the greater offense, error resulting from failure to give an instruction on another still lesser included offense is cured.' " *State v. Horn*, 278 Kan. 24, 43, 91 P.3d 517 (2004) (quoting *Easter v. State*, 306 Ark. 615, 620, 816 S.W.2d 602 [1991]). The Court of Appeals provided its own characterization of the doctrine:

"The rule is not really a rule at all in the sense that it must be invariably or even routinely applied, although the State certainly suggests otherwise. It is, rather, simply a logical deduction that may be drawn from jury verdicts in certain cases. If a jury convicts of a greater offense, having been given the opportunity to consider a lesser offense, and that verdict necessarily establishes a factual element that would be legally inconsistent with an even lower offense on which no instruction were given, the defendant cannot have suffered any prejudice from the failure to give that instruction." *Plummer*, 45 Kan. App. 2d at 711.

The State contends that the Court of Appeals erroneously reformulated the skip rule. Instead, the State suggests that the rule must be mechanically applied whenever a jury has rejected a higher severity level lesser included offense in favor of the charged crime. Such an application would essentially condone a district court's failure to instruct on a less severe lesser included offense for which there was "some evidence," even though the statute says that a "judge shall instruct the jury as to the crime charged and *any* such lesser included crime." (Emphasis added.) K.S.A. 22-3414(3). There is no readily discernible reason for a court-made rule which would emasculate the clear statutory mandate to instruct on all lesser included offenses that are supported by the evidence. In contrast, as suggested by the Court of Appeals, the "rule" should be viewed as simply providing a route to harmlessness in those circumstances where the elements of the crime of conviction, as compared to a rejected lesser included offense, necessarily show that the jury would have rejected or eliminated an even lesser offense.

Here, as the Court of Appeals explained, the jury's selection of aggravated robbery over simple robbery only tells us that the jury

believed Schwabuer's scrapes and scratches fulfilled the bodily harm element of aggravated robbery. "That says nothing about whether the jurors, properly informed on the law, might have concluded that Plummer completed a theft before the confrontation." 45 Kan. App. 2d at 711.

Accordingly, the skip rule cannot save the conviction in this instance; the jury's verdict does not logically lead us to harmlessness. Plummer's conviction for aggravated robbery is reversed, and the matter is remanded for a new trial.

Reversed and remanded.