No. 102,840

STATE OF KANSAS, *Appellee*, v. RODRIGO LUCIFER TRUJILLO, *Appellant*.

(294 P.3d 281)

Opinion filed February 15, 2013.

*Meryl Carver-Allmond*, of Kansas Appellate Defender Office, argued the cause and was on the brief for appellant.

*Steven J. Obermeier*, assistant district attorney, argued the cause, and *Drew A. Cummings*, legal intern, *Stephen M. Howe*, district attorney, and *Steve Six*, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

JOHNSON, J.: Rodrigo Trujillo seeks review of the Court of Appeals' decision affirming his convictions for possession of cocaine and violation of a protection order based upon an incident at a former girlfriend's house. The State elicited evidence of multiple acts that would support the violation of a protection order charge; the State failed to elect one particular act upon which the jury could rely; Trujillo did not request a unanimity instruction or object to its omission; and the district court did not give the jury a unanimity instruction requiring it to agree on the particular act that would support conviction on the protection order charge. The Court of Appeals found the unanimity error to be harmless because Trujillo presented a unified defense. The panel also rejected Trujillo's claim that law enforcement lacked probable cause to arrest him for the crimes, finding that Trujillo had not preserved the issue for appeal. *State v. Trujillo*, No. 102,840, 2011 WL 420707, at *3 (Kan. App. 2011) (unpublished opinion). We affirm the Court of Appeals' decision in which it affirmed both of Trujillo's convictions.

## FACTUAL AND PROCEDURAL HISTORY

The incident giving rise to the charges in this case began on June 22, 2008, when Trujillo drove his truck to the home of Donnita Tillery, with whom he had previously been involved. Upon arrival, Trujillo noticed that his truck had overheated, and he raised the hood to check the vehicle's oil and water. Then, Trujillo entered Tillery's house and told her that he needed to wash his hands, use the restroom, and get water for his overheated truck. After Trujillo retrieved a drink in a glass bottle from the refrigerator, Tillery was hit in the face with the bottle, causing her eye to bleed. Both Tillery and Trujillo stated that they believed the injury was accidental.

Trujillo said it happened when they both moved at the same time. Tillery maintained that it occurred during a struggle with Trujillo, when he cornered her and tried to hug her. This was after she had attempted to call the police. Tillery also stated that Trujillo tried to "come at her again" but she grabbed her mace and sprayed him in the face.

After Trujillo left the house and returned to his truck, Tillery locked the doors and called the police. She then put two pitchers of water on the porch, one of which was a glass container, for Trujillo to use in his truck. Tillery told police that Trujillo intentionally threw the glass pitcher and broke it; Trujillo claimed it slipped from his oily hands.

Officer Tiffany Gorman was the first to arrive at the scene and found Trujillo working on his truck. Officer Gorman described her interaction with Trujillo as going from confrontational to jovial; the officer believed that Trujillo was under the influence of something.

When Officer Gorman interviewed Tillery, she observed that Tillery was upset, crying, shaking, and bleeding internally in her eye. Tillery told the officer that Trujillo had entered her house uninvited, cornered her, and attempted to hug her against her will. The bottle hit her eye during that struggle. When Trujillo attempted to hug her again, Tillery maced him. She also told the officer that Trujillo had deliberately broken the glass pitcher on the porch. Tillery further informed the officer that the couple had a history of domestic violence and that there was a no-contact order issued. Officer Gorman then called dispatch personnel to verify that there was a no-contact order in place, although the police would later discover that the order had expired. Officer Gorman would later testify that she believed she had probable cause to arrest Trujillo for disorderly conduct, criminal property damage, domestic battery, and violation of a protection order.

After Trujillo was arrested and taken to the police station, an officer conducted an inventory search that produced a folded dollar bill with cocaine inside. Trujillo was charged with possession of cocaine and domestic battery.

While the case was pending, Trujillo was ordered to have no contact with Tillery. But she would later relate that Trujillo called

her three times from jail and wrote her letters in July 2008, while the no-contact order was in force. That prompted the State to charge the additional crime of violation of a protection order.

Trujillo would later admit to making one of the telephone calls. But he testified that he was unaware he could not contact Tillery until he learned of the restriction at his trial in January 2009, well after he was alleged to have made the telephone call and mailed the letters. In addition, he asserted that he mailed the letters to a man named Herrardo Diaz and did not instruct him to deliver them to Tillery, despite the fact that she found them stuffed under her door in mid-July 2008. Although the content of the letters suggested that Tillery was the intended recipient, as for instance the one letter addressed to "Dear Love" and the request for the recipient to "lift that restraining order with the Judge," Trujillo testified that he was just writing down his thoughts to send to his best friend, Diaz.

Prior to trial, Trujillo sought to suppress the cocaine found in his pocket by asserting that the officer did not have probable cause to arrest him at Tillery's house. He argued that there was not a valid restraining order in place at the time and that the officer did not have probable cause to believe he had committed any other crime. The district court concluded there was probable cause for the arrest and denied the motion.

At trial, the State failed to elect which contact with Tillery it was alleging violated the protection order, i.e., one of the telephone calls or the mailed letters. The judge also failed to instruct the jury that it had to unanimously agree upon which one of the acts violated the no-contact order. Compounding the effect of those errors, the prosecutor argued in closing that the jury could find that either the call or the letters constituted the prohibited contact. Trujillo did not object to the instructions or request a unanimity instruction.

The jury ultimately found Trujillo not guilty on the domestic battery charge but convicted him of possession of cocaine and violation of a protection order. The district court sentenced Trujillo to 12 months' probation with an underlying 11-month prison term. Trujillo then filed the proper notice of appeal.

At the Court of Appeals, Trujillo asserted that the court should have given the jury a unanimity instruction and that the cocaine should have been suppressed because police did not have probable cause to arrest him. The panel unanimously affirmed his convictions. *Trujillo*, 2011 WL 420707, at *1.

With respect to the unanimity instruction, the Court of Appeals noted that "Trujillo and the State both agree that the case involves multiple acts and that the district court committed error by failing to give the unanimity instruction," but that the parties disagreed as to whether the omission was clearly erroneous, *i.e.*, reversible error. *Trujillo*, 2011 WL 420707, at *1. Ultimately, the panel opined that the only dispositive issue for the jury involved Trujillo's *mens rea*, *i.e.*, whether he knowingly violated the protective order, so that an instruction that the jury must be unanimous on the particular act, *i.e.*, the *actus reus*, would not have changed the result of the trial. *Trujillo*, 2011 WL 420707, at *2.

With respect to the probable cause issue, the panel noted that the remedy sought was the suppression of the evidence of cocaine presented at trial. But because Trujillo had not contemporaneously objected to the introduction of the cocaine evidence at trial on the same constitutional basis as he alleged on appeal, the panel found that "Trujillo did not preserve the issue for review, and his argument fails." *Trujillo*, 2011 WL 420707, at *3.

We granted Trujillo's petition for review of the Court of Appeals' decision.

## UNANIMITY INSTRUCTION

In *State v. Voyles*, 284 Kan. 239, 160 P.3d 794 (2007), this court laid down analytical steps to follow when considering a multiple acts claim on appeal. The threshold question in the *Voyles* framework, over which the court exercised unlimited review, was whether the case truly involved multiple acts, *i.e.*, whether the defendant's actions could have given rise to multiple counts of the charged crime or whether the alleged conduct was unitary. *Voyles*, 284 Kan. at 244.

The second step in *Voyles* was a determination of whether an error occurred. If the State did not inform the jury which act to

rely upon during its deliberations and the trial court did not instruct the jury that it must be unanimous about the particular criminal act that supported the conviction, there was error. *Voyles*, 284 Kan. at 244-45; see also *State v. Colston*, 290 Kan. 952, 968, 235 P.3d 1234 (2010).

The final step in *Voyles* was to determine whether the error was reversible. After considering several alternatives, *Voyles* determined that the "clearly erroneous" provision of K.S.A. 22-3414(3) should apply. *Voyles*, 284 Kan. at 245-47. *Voyles* opined that a district court's failure to instruct on unanimity was reversible under the clearly erroneous standard unless the defendant had presented a unified defense or a general denial of all of the acts, specifically explaining:

"If there is no unified defense, we do not tolerate verdict uncertainty in these cases. Stated in the language of the clearly erroneous standard of review applicable when no unanimity instruction has been requested, cases not containing a unified defense are reversed because the reviewing court is firmly convinced that there is a real possibility the jury would have returned a different verdict if the instruction had been given." 284 Kan. at 253.

Recently, we have attempted to clarify and standardize the progression of appellate analysis and the corresponding standards of review for jury instruction issues. See, *e.g.*, *State v. Plummer*, 295 Kan. 156, Syl. ¶ 1, 283 P.3d 202 (2012) (outlining four-step process for jury instruction issues). But we have recognized that jury instruction issues involving the clearly erroneous standard of K.S.A. 22-3414(3) tend to blend or conflate the determinations of appellate reviewability, error on the merits, and reversibility of the error. See *State v. Williams*, 295 Kan. 506, 510, 286 P.3d 195 (2012). *Williams* suggested the following framework when an instruction is claimed to be clearly erroneous: (1) Utilizing the unlimited review applied to legal questions, the reviewing court first determines whether the instruction or the failure to give the instruction was erroneous; and, (2) if error is found, the court must review the entire record to make a de novo determination of whether it is firmly convinced that the jury would have reached a different verdict had the instruction error not occurred. 295 Kan. at 515-16.

The framework in *Williams* is not significantly different from the *Voyles* progression. One must necessarily perform the first two steps of *Voyles*—determining if the case involves multiple acts and if an error was committed because of a failure to elect or instruct—in order to establish that the failure to give the unanimity instruction was erroneous, as required by the first step in the *Williams* analysis. Then, both paradigms move to a clearly erroneous reversibility inquiry that uses a result-oriented test. *Voyles* stated the test as "the reviewing court is firmly convinced that there is a real possibility the jury would have returned a different verdict if the instruction had been given." 284 Kan. at 253. *Williams'* version was "whether the reviewing court is firmly convinced that the jury would have reached a different verdict had the instruction error not occurred." 295 Kan. at 516. We do not discern a practical difference between the stated tests, and therefore, we opt to omit the "real possibility" language to avoid any confusion with the constitutional harmless error test we set forth in *State v. Ward*, 292 Kan. 541, Syl. ¶ 6, 256 P.3d 801 (2011), *cert. denied* 132 S. Ct. 1594 (2012) (constitutional harmless error standard paraphrased as "where there is no reasonable possibility that the error contributed to the verdict").

Granted, *Voyles* specifically looked at whether the defendant had presented a unified defense or a general denial to any of the multiple acts. But we do not intend those circumstances to create structural error, as Trujillo suggests. See *Plummer*, 295 Kan. at 162 (declining to find structural error for refusing party's request for legally appropriate and factually supported instruction). Rather, the defendant's defense strategy is merely an important and compelling factor in firmly convincing the reviewing court that the jury would have reached a different verdict had the instruction error not occurred.

Here, the parties concede that the alleged telephone call and the sending of the letters were factually separate and distinct acts, motivated by fresh impulses. See *Colston*, 290 Kan. at 962 (acts are multiple acts if factually separate and distinct; incidents are factually separate when independent criminal acts occur at different times or when later act motivated by a fresh impulse). Further,

the parties concede that it was error not to give the unanimity instruction. We agree; the evidence supports the parties' concessions in this case. Accordingly, all that remains is to determine whether the erroneous failure to give the jury a unanimity instruction was clearly erroneous, so as to require reversal.

*Standard of Review*

In *Ward*, 292 Kan. 541, Syl. ¶ 8, we held that a harmless error analysis involves a de novo review of the entire record. In *Williams*, we adopted that same global de novo review standard for the clearly erroneous inquiry on an omitted jury instruction. 295 Kan. at 515.

*Analysis*

In his petition for review, Trujillo contends that

"the point the Court of Appeals opinion misses is that some members of the jury could have quite reasonably believed that either 1) Mr. Trujillo sent the letters to his friend, never intending that they reach Ms. Tillery, or 2) that Mr. Trujillo's phone call to Ms. Tillery was without knowledge of the no contact order."

Then, he asserts that "[i]f six of the jury members only believed the first was true, and six only believed the second was true, then Mr. Trujillo was not convicted of violation of a protection order by a unanimous jury." The fallacy in Trujillo's reasoning is that, if six members of the jury believed his testimony that he did not know about the no-contact order in July 2008, they could not have voted to convict for any of the multiple acts, including the mailing of the letters.

We pause, at this point, to review what the jury was told that it had to determine. The elements instruction on the protection order charge, Instruction No. 13, stated:

"The defendant is charged with the crime of violation of a protective order. The defendant pleads not guilty.

"To establish this charge, each of the following claims must be proved:

"1.  That the defendant knowingly or intentionally violated an order issued as a condition of pretrial release, diversion, probation, suspended sentence, postrelease supervision or at any other time during the criminal case that orders the defendant to refrain from having direct or indirect contact with another person.

"2.    That this act occurred on or about the 2nd day of July through the 28th day of July, 2008, in Johnson County, Kansas."

The instruction requires a knowing or intentional violation of the protective order; an accidental or unintentional contact with the subject of the no-contact order is not a crime. Trujillo testified at trial that he had not previously seen or heard of the conditions of his domestic violence bond and that he did not know that he could not have contact with Tillery when he sent the letters to Diaz or when he called Tillery. His attorney argued in closing that Trujillo had never received the no-contact order and rhetorically asked the jury, "[H]ow do you know what contact order is against you?" With respect to the letters, Trujillo made the additional argument that he had sent them to Diaz without any instructions for Diaz to deliver them to Tillery, *i.e.*, any contact with Tillery via the letters was unintentional, as well as being without knowledge of a protective order.

With the foregoing in mind, we return to Trujillo's hypothetical scenario of six jurors only believing that delivery of the letters to Tillery was unintentional and six only believing that Trujillo's admitted telephone call to Tillery was made without knowledge of the no-contact order. The facial seduction of that example evaporates when one adds the irrefutable fact that Trujillo was convicted, which means that all 12 jurors had to vote in favor of finding that all of the elements of the crime were present, *i.e.*, Trujillo knowingly or intentionally violated the protective order by making contact with Tillery. It is possible that less than all of the jurors (six in the hypothetical) could have believed Trujillo's testimony that he did not intend to contact Tillery with the letters and still vote to convict on the admitted telephone call because of a disbelief of Trujillo's claim he did not know of the protective order. But the six jurors that hypothetically believed Trujillo's testimony that he did not know about the protective order could not have voted to convict him even if they believed Trujillo intentionally contacted Tillery with the letters. Regardless of whether the contact by letters was intentional or accidental, no juror could vote to convict on that act without finding that Trujillo had knowledge of the no-contact order.

In *Voyles* parlance, Trujillo presented the unified defense that he did not knowingly violate a protective order—either by telephone or letter—because he did not know that he had been ordered to have no contact with Tillery. His additional defense that the contact by letter was unintentional did not create any verdict uncertainty. In this case, the simple fact that the jury convicted Trujillo establishes that it was unanimous in its belief that Trujillo knew about the existence of the protective order when he admittedly made the unlawful telephone call. In other words, under the evidence presented in this case, the jury had to either unanimously find that Trujillo knowingly contacted Tillery by telephone in violation of the protective order or it would have had to acquit him on the charge. Accordingly, we cannot be firmly convinced that the jury would have reached a different verdict had the instruction error not occurred. The failure to give a unanimity instruction was not clearly erroneous under the unique facts of this case.

## PROBABLE CAUSE TO ARREST

The second issue in Trujillo's petition for review declares that "[t]he district court erred in denying Mr. Trujillo's motion to suppress the cocaine found in his pocket, because there was not probable cause to arrest him." The petition then proceeds to argue that there was nothing to lead a prudent law enforcement officer to believe that a crime had been committed by Trujillo; that his arrest was unlawful; and that the cocaine found in his pocket pursuant to that arrest should have been suppressed. But the Court of Appeals did not rule on that issue because it found that Trujillo had not preserved the issue for appeal by contemporaneously objecting to the introduction of the cocaine evidence on constitutional grounds. *Trujillo*, 2011 WL 420707, at *3. Pointedly, Trujillo does not ask us to review the Court of Appeals' ruling on preservation.

Recently, this court was presented with a similar situation in *State v. Allen*, 293 Kan. 793, 268 P.3d 1198 (2012). There, the district court sided with the State's refusal to follow a plea agreement sentencing recommendation, after the defendant failed to appear at the sentencing hearing in accordance with a condition of the plea agreement. Before the Court of Appeals, Allen argued for

the first time that the State was bound to follow the plea agreement because Allen had substantially complied with the contract. The Court of Appeals first declared that issues not asserted before the trial court cannot be raised for the first time on appeal and noted that Allen had claimed no exception to the rule. But the panel then continued by analyzing the merits of Allen's claim of specific performance. See 293 Kan. at 795.

In her petition for review to this court, Allen only challenged the panel's holding on the merits with respect to whether she had substantially performed under the plea agreement. "She did not challenge the Court of Appeals' independent and dispositive procedural holding," *i.e.*, that she had not preserved the substantial performance issue for appellate review. 293 Kan. at 795. A majority of this court held that Allen's failure to present the procedural holding of the Court of Appeals as an issue in the petition for review precluded this court from considering the issue. 293 Kan. at 795-96. Therefore, because the procedural holding would remain as a bar to Allen obtaining relief on appeal, any ruling we might make on the merits would be worthless to Allen. 293 Kan. at 796.

Here, the Court of Appeals' procedural ruling that Trujillo had not preserved the probable cause issue for appeal is the *only* holding in that opinion. We are not presented with an alternative ruling on the merits by the panel which we could review, even if we so desired. Consequently, because the Court of Appeals' decision on the preservation issue was "not presented in the petition [for review], or fairly included therein, [it] will not be considered by the court." Supreme Court Rule 8.03 (a)(5)(c) (2011 Kan. Ct. R. Annot. 70).

Affirmed.