LEBEN, J.,
concurring: I fully join the court’s opinion, but I wish to add a few comments to explain my understanding of the standard now applied in Kansas to determine whether a jury instruction was clearly erroneous. The clearly erroneous test applies when the defendant does not object to the instructions given by the trial court.
In our opinion, we have applied the standard our Supreme Court announced in State v. Williams, 295 Kan. 506, 286 P.3d 195 (2012). The Williams court said that we may reverse for clear error only when we are “firmly convinced that the juiy would have reached *730 a different verdict had the instruction error not occurred.” 295 Kan. at 516. Our Supreme Court continues to state the standard in that language. See In re Care & Treatment of Thomas, 301 Kan. 841, 348 P.3d 576, 580 (2015); State v. Brammer, 301 Kan. 333, 341, 343 P.3d 75 (2015). But for a long time before Williams, the court had consistently stated the standard in a different way—that we may reverse for clear error where we are “firmly convinced there is a real possibility the jury would have rendered a different verdict if the trial error had not occurred.” State v. Warrior, 294 Kan. 484, 514, 277 P.3d 1111 (2012); accord State v. McCullough, 293 Kan. 970, 975, 270 P.3d 1142 (2012); State v. Miller, 293 Kan. 46, 50, 259 P.3d 701 (2011); State v. Morningstar, 289 Kan. 488, 494, 213 P.3d 1045 (2009); State v. Anderson, 287 Kan. 325, 342, 197 P.3d 409 (2008); State v. Torres, 280 Kan. 309, 321-22, 121 P.3d 429 (2005); State v. Miller, 268 Kan. 517, 524-25, 997 P.2d 90 (2000); State v. DeHerrera, 251 Kan. 143, 148, 834 P.2d 918 (1992).
While the language changed in Williams, there was no statement in that opinion that the court was changing or tightening the standard for determining whether a clear error had occurred. From the language itself, however, one might think that the standard had changed. Under the pre-Williams standard, one needed only to conclude (albeit firmly) that there was a “real possibility” that the jury would have reached a different verdict. After Williams, one must be “firmly convinced that the jury would have reached a different verdict.” (Emphasis added.) Indeed, one of my colleagues concluded in 2013 that the language change “seem[ed] to ratchet up the defendant’s burden in showing a jury instruction to [be] clearly erroneous.” State v. Adams, No. 106, 935, 2013 WL 4046396, at *13 (Kan. App. 2013) (unpublished opinion) (Atche-son, J., dissenting).
But our Supreme Court has signaled that no change was intended. In State v. Trujillo, 296 Kan. 625, 631, 294 P.3d 281 (2013), after noting both the pre-Williams and Williams statements of the test, the court said that it did “not discern a practical difference between the stated tests.” Accordingly, the court said that it had “opt[ed] to omit the heal possibility’ language to avoid any confu *731 sion with the constitutional harmless error test,” which provides that an error is harmless “where there is no reasonable possibility that the error contributed to the verdict.” 296 Kan. at 631.
I add this concurrence to note my understanding that, as Trujillo suggests, the test we apply in practice did not change under Williams and later cases. And Jeremie Berney s case is a good example of the significance of this understanding.
In truth, I have no idea how this case would have been decided by the jury had the instruction error not occurred. This case came down to a credibility contest between two witnesses. Berney admitted taking the money but said Standifer had told him to—while wanting to have it look like she didn’t (since she had not wanted to explain why she might be giving him money if someone saw her do so). Standifer claimed that Bemey simply stole the tip jar. That’s hard to sort out, especially for an appellate judge who can only read a transcript. But in die context of this case, there is a very real possibility that the jury would have come to a different conclusion had it been told it could not consider Bemey’s past record in determining guilt.
Federal courts perform a similar analysis; their practice also suggests that accepting the Trujillo statement that the Kansas test has not changed in any practical way would keep Kansas well in line with how other courts approach similar cases.
In federal courts, what we call “clear error” is called “plain error” (error requiring reversal even though there was no timely objection to the error). Many federal courts say that there is plain error when, among other things, there is a “reasonable probability” that the error affected the trial’s outcome. E.g., United States v. Fast Horse, 747 F.3d 1040, 1043 (8th Cir. 2014); United States v. Thornburgh, 645 F.3d 1197, 1210-12 (10th Cir. 2011); United States v. Mazza, 594 Fed. Appx. 705, 708 (2d Cir. 2014) (unpublished opinion); United States v. Perez, 514 Fed. Appx. 263, 263-64 (3d Cir. 2013) (unpublished opinion); United States v. Cuenca-Vega, 544 Fed. Appx. 688, 692 (9th Cir. 2013) (unpublished opinion). Were I applying that test, I would find plain error: there is a reasonable probability here that the error affected the trial’s outcome.
*732 Of course, our job is not to apply these federal cases; we must apply the precedents of tire Kansas Supreme Court. While Williams’ language requires that we now find that tire jury “would have reached a different verdict” had the error not occurred, the use of the term “would” does not require that we have something approaching certainty to find clear error. In no case has our Supreme Court indicated that it intended to change how the clearly erroneous test is applied, and in Trujillo it told us that it saw “no practical difference” between the two versions of the test. Based upon the understanding that our Supreme Court did not intend a substantial difference in the test’s application, I find clear error in this case.