NOT DESIGNATED FOR PUBLICATION

No. 112,589

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JAMOND MILLER,
*Appellant*.


MEMORANDUM OPINION

Appeal from Wyandotte District Court; ROBERT P. BURNS, judge. Opinion filed May 6, 2016. Affirmed.

*Michelle Davis*, of Kansas Appellate Defender Office, for appellant.

*Mollie R. Hill*, assistant district attorney, *Jerome A. Gorman*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before ARNOLD-BURGER, P.J., GREEN and LEBEN, JJ.

*Per Curiam*:  Jamond Miller appeals his jury trial convictions for one count of aggravated robbery and one count of aggravated battery.  On appeal, Miller raises two issues involving the jury instructions. First, Miller argues that the trial court failed to instruct the jury with the applicable definition of "knowingly" committing the aggravated battery. The State concedes the trial court's error but argues it was harmless. Second, Miller contends that the trial court failed to give the lesser included offense instruction of reckless aggravated battery. And finally, Miller maintains that the trial court erred in

1

using his criminal history to increase his sentence without proving it to a jury beyond a reasonable doubt. Finding no reversible error, we affirm.

On May 2, 2012, officers responded to the Snack Pack gas station and found Lee Mitchell, who had been shot. Officer Christopher Blake spoke with Mitchell while he was being treated by EMS, and Mitchell told Officer Blake that he was outside the gas station talking to Jensen Roberts and Katrina James when two black males armed with guns walked up to them. Mitchell tried to run away and was shot.

At trial, Mitchell testified that he was at the Snack Pack on May 2, 2012, when he saw his friends James and Roberts inside. He walked them out after they complained about two men in the parking lot who were bothering them. After walking the girls to their car and turning to walk back inside, Mitchell saw a man run up to him with a gun. The man told Mitchell not to run or he would shoot him. Mitchell testified that he was scared so he decided to run. As he was running, he heard a gunshot, his leg went numb, and he fell to the ground. At trial, Mitchell identified Miller as the man who pointed the gun at him. Mitchell had also previously identified Miller as the man with a gun from a photo lineup.

Roberts also testified at trial and stated that she and her friend James had stopped at the Snack Pack on May 2, 2012. Two men came up to their car and attempted to talk to them. In doing so, the men touched the top of Roberts' car. The girls ignored the men and went inside where they ran into Mitchell. Roberts testified that after Mitchell walked them back to their car, the same two men approached them again and one of the men pointed a gun at Roberts' head and told her not to move or he would shoot her. The man demanded money from her while the other man pointed a gun at Mitchell. Roberts identified Miller as the second man who pointed a gun at Mitchell as well as the person who shot Mitchell.

2

James testified at trial that on May 2, 2012, she had gone with Roberts to the Snack Pack. When they pulled in, two men came up to them and tried to talk to them. James testified that the men leaned against Roberts' car while they talked to them. James and Roberts went inside where they ran into Mitchell. After Mitchell walked them back out to their car the same two men approached them again but this time they were armed with guns. James identified Miller as one of the two men with a gun and identified Miller as the man who shot Mitchell as he tried to run away.

Jamie Pfingsten, the latent print examiner for the Kansas City Police Department, testified that she was able to identify one of the fingerprints recovered from the top of Roberts' car as Miller's right ring finger.

The trial court held an instruction conference and discussed the appropriate instructions. Miller did not object to any of the instructions.

The jury convicted Miller of one count of aggravated robbery and one count of aggravated battery. At sentencing, the trial court determined that Miller's criminal history score was an "A." Miller did not object to his criminal history score. The trial court sentenced Miller to 221 months in prison on count one and 41 months on count two, to run concurrently with 36 months of postrelease supervision.

*Did the Trial Court Err in Failing to Define the Term "Knowing" in the Aggravated Battery Instruction?*

Miller first argues that the trial court erred in failing to give the jury the appropriate definition concerning that he "knowingly" committed aggravated battery.

For a knowing aggravated battery, the State must prove that the defendant "acted while knowing that some type of great bodily harm or disfigurement of another person

3

was reasonably certain to result from the defendant's action." *State v. Hobbs*, 301 Kan. 203, 213, 340 P.3d 1179 (2015). Here, Miller argues that the trial court failed to instruct the jury with the appropriate definition: that Miller acted knowing great bodily harm was reasonably certain to result.

Although Miller did not object to the instruction, this court may review for clear error. See K.S.A. 2015 Supp. 22-3414(3); *State v. Williams*, 295 Kan. 506, Syl. ¶ 3, 286 P.3d 195 (2012). We first determine whether the instruction was appropriate, a legal question subject to unlimited review. If the trial court erred, then we next consider a reversibility inquiry. 295 Kan. 506, Syl. ¶¶ 4-5.

The trial court's instruction on the definition of a knowing aggravated battery was erroneous because it was not legally correct. See *Williams*, 295 Kan. 506, Syl. ¶ 4 (The designation of "error" encompasses an instruction that is not legally appropriate.); *State v. Plummer*, 295 Kan. 156, 161, 283 P.3d 202 (2012) (An instruction that does not accurately state the applicable law would be legally infirm.). The State concedes this point to Miller based on *Hobbs*, 301 Kan. at 210-11, where the court held:

> "Harmonizing K.S.A. 2011 Supp. 21-5413(b)(1)(A) and K.S.A. 2011 Supp. 21-5202(f), (g), and (i) to the greatest extent possible—see *State v. Coman,* 294 Kan. 84, 93, 273 P.3d 701 (2012) (court considers provisions of an act *in pari materia* with view to reconciling, bringing provisions into workable harmony); *State v. Frierson,* 298 Kan. 1005, 1012, 319 P.3d 515 (2014) (court assumes legislature does not intend to enact useless, meaningless legislation)—leads us to conclude that the legislature does not intend for 'general intent' to necessarily mean what it once did and that 'knowingly,' as used in K.S.A. 2011 Supp. 21-5413(b)(1)(A), means that the accused acted when he or she was aware that his or her conduct was reasonably certain to cause the result. This does not mean that the accused must have foreseen the specific harm that resulted. Instead, it is sufficient that he or she acted while knowing that any great bodily harm or disfigurement of the victim was reasonably certain to result from the action."

4

In this case, the aggravated battery instruction reads as follows: "The State must prove that the defendant committed element 1 of the crime knowingly. A defendant acts knowingly when the defendant is aware of the nature of his conduct that the State complains about." Miller did not object to this instruction. Nevertheless, as stated in *Hobbs*, it was error for the court to not instruct that Miller must have been aware that his conduct was reasonably certain to cause the result. 301 Kan. at 211. Although this ends our discussion on the question of whether the instruction was legally correct, our analysis does not end there because we are not convinced the error changed the outcome of the trial.

Once we find error, we then must consider a "reversibility inquiry." For an instruction error not objected to, the standard is clearly erroneous. See K.S.A. 2015 Supp. 22-3414(3); *Williams*, 295 Kan. at 516. The reversibility inquiry "'assesses whether [the court] is firmly convinced that the jury would have reached a different verdict had the instruction error not occurred. The party claiming a clearly erroneous instruction maintains the burden to establish the degree of prejudice necessary for reversal.' *Williams*, 295 Kan. 506, Syl. ¶ 5." *State v. Smyser*, 297 Kan. 199, 204, 299 P.3d 309 (2013); see *State v. Trujillo*, 296 Kan. 625, 631, 294 P.3d 281 (2013); *State v. Berney*, 51 Kan. App. 2d 719, 722, 353 P.3d 1165 (2015).

Miller argues that the evidence supports a finding that a jury properly instructed on the elements of a knowing aggravated battery could have reached a different result: that the shooting was accidental. To support this argument, Miller maintains that the State did not present any evidence as to how the actual firing of the gun took place. Miller further contends that because the State did not present any testimony as to the circumstances of the shooter in firing the gun, then the jury, if properly instructed, could have reached a different verdict.

5

Based upon the evidence presented, the jury would not have reached a different verdict if properly instructed on the elements of a knowing aggravated battery. There is simply no evidence that any of the acts in this case were accidental. The State presented evidence that Miller approached Mitchell, and as he pointed the gun in Mitchell's face, he told him that if he moved he would shoot him. When Mitchell tried to run, he heard a gunshot and realized that he had been shot in the leg. Roberts also testified that Miller told them that if they ran or moved that he would shoot them. Additionally, James also testified that Miller pointed a gun at Mitchell and told him if he tried to run he would shoot him. James further testified that when Mitchell ran, Miller shot him. There was no evidence that the parties struggled over the gun or that Miller was firing the gun into the air. Moreover, Miller did not testify in his defense, so we cannot look to his testimony to shed light on his purpose for firing the gun at Mitchell. As a result, all of the evidence showed that Miller walked up to Mitchell and pointed a gun at him while threatening him that if he tried to run he would shoot him. Miller then shot Mitchell as he ran away.

To sum up, let us review the facts of the shooting:
- Miller was pointing a gun in the direction of Mitchell when it was fired.
- The gun could not have fired unless the trigger was pulled with some conscious effort on Miller's part.
- The gun was fired while Miller held it, injuring Mitchell.
- A witness testified that Miller pointed a gun at Mitchell and when Mitchell ran, Miller shot him.
- There was no evidence that Miller was target shooting, was indiscriminately firing the gun into the air, or was shooting into a crowd of people.
- There was no evidence—even in the form of a statement from Miller about his purpose in shooting Mitchell—to support a determination that the injuring of Mitchell was unintentional.

As a result, the State clearly presented evidence of Miller pointing and firing a gun directed at Mitchell's body under a circumstance which indicated a design to intentionally injure Mitchell. Even if the jury had been properly instructed on the definition of knowingly, the jury would not have reached a different result. Thus, we find no reversible error regarding this instruction.

*Did the Trial Court Err in Failing to Include a Lesser Included Instruction on Reckless Aggravated Battery?*

Next, Miller argues that the evidence at trial supported a lesser included offense instruction for reckless aggravated battery. Under K.S.A. 2015 Supp. 21-5413(b)(2)(A), reckless aggravated battery is "recklessly causing great bodily harm to another person or disfigurement of another person." Miller maintains that the trial court erred in not instructing the jury on that lesser included offense.

In response, the State notes that Miller did not request this instruction and further maintains that the trial court was not required to give the lesser included offense instruction because no evidence had been presented that would reasonably justify a conviction on reckless aggravated battery.

For instruction issues, the following analysis and standards of review on appeal are as follows:

"(1) First, the appellate court should consider the reviewability of the issue from both jurisdiction and preservation viewpoints, exercising an unlimited standard of review; (2) next, the court should use an unlimited review to determine whether the instruction was legally appropriate; (3) then, the court should determine whether there was sufficient evidence, viewed in the light most favorable to the defendant or the requesting party, that would have supported the instruction; and (4) finally, if the district court erred, the appellate court must determine whether the error was harmless, utilizing the test and

7

degree of certainty set forth in [*State v. Ward*, 292 Kan. 541, Syl. ¶ 6, 256 P.3d 801 (2011), *cert. denied* 132 S. Ct. 1594 (2012)]." *Plummer*, 295 Kan. at 163.

Because Miller did not request the lesser included offense instruction, he must establish clear error. K.S.A. 2015 Supp. 22-3414(3). In other words, because he failed to request the instruction, even if we determine that the trial court erred in failing to give the lesser included offense instruction, we will not reverse the verdict unless Miller shows that the trial court committed clear error. To find clear error, we must be "firmly convinced that the jury would have reached a different verdict if the instruction had been given." *State v. Cameron*, 300 Kan. 384, 389, 329 P.3d 1158, *cert. denied* ___ U.S. ___, 135 S. Ct. 728 (2014).

We agree with Miller that reckless aggravated battery is a lesser included offense of knowing aggravated battery. See K.S.A. 21-5413(b); *State v. McCarley*, 287 Kan. 167, 177-78, 195 P.3d 230 (2008) (A severity level 5 or 8 aggravated battery is a lesser degree of a severity level 4 aggravated battery.). Thus, the lesser included offense instruction was legally appropriate.

In addition to being legally appropriate, the instruction must also be supported by the particular facts of the case. *Plummer*, 295 Kan. at 161. The *Plummer* court described the factual determination as follows:

"[P]ursuant to the language of K.S.A. 22-3414(3), a lesser included offense instruction is only required 'where there is some evidence which would reasonably justify a conviction of some lesser included crime.' Therefore a district court does not err in refusing to give a lesser included offense instruction on a crime which is unsupported by the evidence in that particular case." 295 Kan. at 161.

Despite the instruction being legally appropriate, we determine that there is insufficient evidence to support the instruction.

8

Miller argues that based on the chaotic nature of the events on the night in question the evidence could have supported a finding by the jury that Miller acted recklessly. Nevertheless, Miller's arguments do not point to any evidence that would justify a conviction for reckless aggravated battery. K.S.A. 2015 Supp. 21-5413(b)(2)(A) defines reckless aggravated battery as "recklessly causing great bodily harm to another person or disfigurement of another person." Recklessness is also defined by statute in K.S.A. 2015 Supp. 21-5202(j), which states: "A person acts 'recklessly' or is 'reckless,' when such person consciously disregards a substantial and unjustifiable risk that circumstances exist or that a result will follow, and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation." In contrast, under K.S.A. 2015 Supp. 21-5202(i), a person acts knowingly when the person "is aware of the nature of such person's conduct or that the circumstances exist" and "is aware that such person's conduct is reasonably certain to cause the result."

To support his argument, Miller cites *State v. Ochoa*, 20 Kan. App. 2d 1014, 895 P.2d 198 (1995), *disapproved in part by State v. Valentine*, 260 Kan. 431, 435, 921 P.2d 770 (1996). Ochoa testified that he did not intend to shoot anyone and that he merely shot his pistol in the air to frighten those advancing toward him. Based on this testimony, the *Ochoa* court held that there was evidence to support a conviction of either intentional or reckless aggravated battery. Therefore, instructions on both were appropriate. Moreover, the *Ochoa* court further held that based on the facts of the case, there was a real possibility the verdict would have been different if the lesser included instructions had been given. 20 Kan. App. 2d at 1021.

The facts of this case are clearly distinguishable from the facts in *Ochoa*. Different from *Ochoa*, the evidence offered at trial in this case does not indicate that Miller recklessly committed aggravated battery. Each witness who testified at trial stated that Miller was pointing a gun at Mitchell while threatening to shoot him if he tried to run.

9

When Mitchell tried to run, Miller shot him. Additionally, in contrast to *Ochoa*, there is no evidence that Miller recklessly shot Mitchell or that he was aiming at something other than Mitchell's body. Because the evidence would not have supported a conviction for reckless aggravated battery, the trial court did not err in failing to include the lesser included offense instruction of reckless aggravated battery.

As a result, we determine that the trial court did not commit clear error because we are not firmly convinced that the jury would have reached a different verdict if the instruction had been given.

*Did the Trial Court Err in Using Miller's Criminal History to Increase His Sentence Without Proving It to a Jury Beyond a Reasonable Doubt?*

In his final issue, Miller argues that the trial court violated his constitutional rights under *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed 2d 435 (2000), by using prior convictions in his criminal history score to enhance his sentence without requiring the criminal history score to be included in the complaint and proven to a jury beyond a reasonable doubt. Miller concedes that our Supreme Court has already decided this issue against him. See *State v. Ivory*, 273 Kan. 44, 45-48, 41 P.3d 781 (2002).

This court is duty bound to follow our Supreme Court precedent absent some indication that the court is departing from its earlier position. *State v. Belone*, 51 Kan. App. 2d 179, 211, 343 P.3d 128, *rev. denied* 302 Kan. ___ (2015). There is no indication that our Supreme Court is departing from its position on this issue. See *State v. Barber*, 302 Kan. 367, 386, 353 P.3d 1108 (2015). Therefore, the trial court properly used Miller's criminal history to increase his sentence.

Affirmed.