NOT DESIGNATED FOR PUBLICATION

No. 122,619

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

ZACKARY J. CARY,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; SETH L. RUNDLE, judge. Opinion filed October 14, 2022. Affirmed.

*Hope Faflick Reynolds* and *Kai Tate Mann*, of Kansas Appellate Defender Office, for appellant.

*Kristi D. Allen*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before SCHROEDER, P.J., MALONE, J., and TIMOTHY G. LAHEY, S.J.

PER CURIAM:  A jury convicted Zackary J. Cary of aggravated escape from custody from the Sedgwick County Adult Residential Work Release Program. Cary, in his timely appeal, argues the district court erred in failing to give a jury instruction on the defense of mistake of fact. Upon an extensive review of the record, we find no clear error by the district court in not giving the instruction on defense of mistake of fact and affirm.

1

In March 2019, the State charged Zackary J. Cary of aggravated escape from custody while being held for a felony, in violation of K.S.A. 2018 Supp. 21-5911(b)(1)(A), a severity level 8 nonperson felony.

At Cary's jury trial, the State called three witnesses: Mike Norris, Brian Hudson, and Stephanie Schroeder. Norris was a senior corrections officer at the Sedgwick County Adult Residential Work Release Program, a court-ordered program designed to assist individuals with reintegration rather than going to jail.

Norris conducted the program's orientation program, explained the facility's rules and expectations to new individuals—including Cary, and provided everyone with a 20-page handbook containing all the facility's rules. During the orientation, a 14- to 15-minute video was shown that explained the basic rules of the facility and outlined the importance of individuals timely being where they needed to be. The orientation video also explained failure to return to the facility could lead to a new charge of aggravated escape from custody.

When the video finished, Norris highlighted the rules that individuals had typically struggled with in the past. Two of those rules were the out of place of assignment (OPA) rule and the absent without leave (AWOL) rule. Norris explained everyone had to sign out when leaving the facility and provide information including where they were going, why they were leaving, and contact information so the facility could check in with the individuals while they were out.

Upon signing out, everyone was always designated a time to return. Failure to sign back in on time resulted in an OPA designation. An individual who failed to return and sign back in more than two hours after the designated return time was marked as AWOL.

An AWOL designation required the shift supervisor to file a report and attempt to contact the missing individual. Norris testified everyone leaving knew they needed to return to the facility.

As part of the orientation process, incoming individuals would sign an acknowledgment of rules and agreement, and they were encouraged to read the facility handbook. Norris and Cary each signed Cary's acknowledgment. The acknowledgment specifically stated:

> "ANY CLIENT RELEASED TO THE CUSTODY OF SCDOC WHO WILLFULLY FAILS TO RETURN TO THE DESIGNATED PLACE OF ASSIGNMENT AT THE TIME SPECIFIED, MAY BE GUILTY OF A NEW CHARGE ([AGGRAVATED] ESCAPE OR FAIL TO RETURN) AND UPON CONVICTION, BE SUBJECT TO THE PENALTY PROVIDED IN THE KANSAS STATUTES ANNOTATED."

Norris testified Cary was permitted to leave the facility on March 14, 2019, to fulfill a case goal.

Hudson, a shift supervisor at the residential facility during Cary's stay, maintained safety and security inside the facility and enforced facility rules. Hudson conducted headcounts to ensure everyone who was supposed to return to the facility had returned and looked for the individuals who did not return. Hudson testified Cary was allotted about two and a half hours to leave the residential facility for a case goal on March 14, 2019, and failed to return. Hudson tried contacting Cary but was unable to reach him. Hudson also searched the facility to ensure Cary was not in his room or somewhere else within the facility.

Schroeder, an intensive supervision officer II (ISO) at the time of the incident, was assigned to supervise Cary at the residential facility. Schroeder strived to help her clients comply with court orders and follow the terms of their probation. Schroeder testified that

3

after an individual goes through orientation at the facility and watches the orientation video, the incoming person meets with his or her ISO for an initial visit. At the initial visit, Schroeder discusses the length of the program, compliance with court orders, the potential need for evaluations, and the rules at the facility—such as the OPA rule. Schroeder testified she directly explained to Cary what OPA meant and, if he violated such rule, there could be consequences. Cary received a few OPA designations during his stay at the residential facility for failing to return at the time he was instructed to do so. After each OPA rule violation, Cary was told to return to the facility but was never orally told failure to return would result in a new criminal charge.

Cary requested jury instructions for Pattern Instructions for Kansas (PIK) Crim. 4th 51.050 (2020 Supp.), PIK Crim. 4th 52.090 (2021 Supp.), and PIK Crim. 4th 52.100 (2021 Supp.) and intended to present a mistake of law defense. The district court denied the request for a mistake of law jury instruction under K.S.A. 2018 Supp. 21-5207(b)(4).

During the State's closing argument and rebuttal closing argument, it explained ignorance of the law was not a defense and "nowhere in any instruction would it read that [Cary] has to be informed that he's violating a law as he leaves the facility." The State further argued:

> "I do not have to prove that Mr. Cary did or [did] not know that he would be potentially charged with aggravated escape from custody charges when he left. That is ignorance of the law, and that is not a defense. And do you know how it's not a defense? Because it wasn't given to you in any of the instructions that Judge Rundle gave, and he is the one [who] instructs on the law."

The jury found Cary guilty of aggravated escape from custody. Cary filed a motion for new trial and judgment of acquittal, arguing, among other things, the district court erred by not allowing the requested jury instruction on the mistake of law defense.

4

The district court denied all pending motions and sentenced Cary to 20 months' imprisonment with 12 months' postrelease supervision.

ANALYSIS

Cary argues the district court erred by failing to instruct the jury on the defense of mistake. Cary asserts a mistake of fact jury instruction was legally and factually appropriate and the failure to provide such instruction to the jury was not harmless error.

When considering jury instructional issues, we first consider "the reviewability of the issue from both jurisdiction and preservation viewpoints, exercising an unlimited standard of review." *State v. Plummer*, 295 Kan. 156, 163, 283 P.3d 202 (2012). Next, we consider whether the "'instruction was legally and factually appropriate.'" *State v. McLinn*, 307 Kan. 307, 318, 409 P.3d 1 (2018). "[F]inally, if the district court erred, the appellate court must determine whether the error was harmless." *Plummer*, 295 Kan. at 163.

The appellate court's reversibility inquiry depends on whether a party properly preserved the jury instruction issue below. *McLinn*, 307 Kan. at 317. Unpreserved instructional errors are reviewed for clear error. K.S.A. 2021 Supp. 22-3414(3). Jury instructions are clearly erroneous if an error occurred and the reviewing court is "'firmly convinced that the jury would have reached a different verdict had the instruction error not occurred.'" *McLinn*, 307 Kan. at 318. As the party claiming clear error, Cary has the burden to establish the prejudice. See 307 Kan. at 318.

The parties disagree whether defense counsel properly preserved the issue for appeal. Cary contends he properly preserved the issue by requesting the jury instruction in district court, though the district court declined to give the instruction to the jury. Before us, Cary admits he orally requested an instruction focused on a mistake of law

5

defense, rather than a mistake of fact defense, during the jury instruction phase of the trial. But he claims the requested instruction included both mistake of law and mistake of fact and both should now be considered as requested before the district court.

The State contends Cary initially requested PIK Crim. 4th 52.090 on the defense of mistake but later clarified he was seeking a jury instruction on mistake of law under PIK Crim. 4th 52.100. Cary responds, again explaining he requested PIK Crim. 4th 52.090 before the district court and such jury instruction includes both mistake of fact and law. Cary argues, in the alternative, if we find the jury instruction was not preserved, then his failure to request the instruction should be reviewed for clear error.

Cary orally requested PIK Crim. 4th 51.050 (State has burden to disprove defense beyond reasonable doubt), PIK Crim. 4th 52.090 (defense if by reason of ignorance of [fact] [law] defendant did not have mental state which statute requires as element of crime), and PIK Crim 4th 52.100 (defense if defendant reasonably believed conduct did not constitute crime and acted in reliance upon official interpretation of [statute] [regulation] [order] defining crime made by [public officer] [agency] legally authorized to interpret statute). Specifically, Cary's counsel stated, "I would like to include, at this time, PIK 51.050, 52.090, 52.100, and I have a specific layout of how that would be. But, basically, Your Honor, mistake of law as a defense, specifically in this situation." The district court further inquired about the mistake of law defense and ultimately denied the requested jury instruction, stating:

> "Well, I don't think that this falls within the mistake of law defenses that are authorized under [K.S.A.] 21-5207 based on the evidence that was presented. So I'm not going to instruct on mistake of law, but you have requested that. You can file those proposed instructions, and that will be preserved for appellate review in the event of a guilty verdict."

After taking a recess, the district court noted it denied the requested jury instruction on mistake of law and the remainder of the proposed instructions were agreed upon. The parties did not request any additional jury instructions. As the State notes, the record reflects Cary did not file his proposed or requested jury instructions with the district court.

Cary broadly argues to us the district court erred in failing to instruct the jury on a defense of mistake but avoids specifying whether he is referring to mistake of law or mistake of fact. While it appears a jury instruction on the mistake of law defense may have been preserved, we observe Cary does not argue on appeal the district court erred in denying his requested mistake of law jury instruction. Therefore, he waives and abandons the issue. See *State v. Davis*, 313 Kan. 244, 248, 485 P.3d 174 (2021) (issue not briefed deemed waived or abandoned). At best, the point is incidentally raised but not argued, which is still deemed waived or abandoned. *Russell v. May*, 306 Kan. 1058, 1089, 400 P.3d 647 (2017). The record before the district court reflects Cary did not argue for or preserve the mistake of fact defense. In his analysis, however, he asserts: "Mistake of fact is a defense when it negates the crime's requisite mental state." Because Cary failed to preserve the jury instruction issue regarding mistake of fact, we review for clear error. See K.S.A. 2021 Supp. 22-3414(3).

We exercise "'unlimited review to determine whether the instruction was legally appropriate; . . . then, the court should determine whether there was sufficient evidence, viewed in the light most favorable to the defendant or the requesting party, that would have supported the instruction.'" *State v. Johnson*, 304 Kan. 924, 931, 376 P.3d 70 (2016); *State v. Williams*, 303 Kan. 585, 598-99, 363 P.3d 1101 (2016).

PIK Crim 4th 52.090, which derives its authority from K.S.A. 2021 Supp. 21-5207(a), states: "It is a defense in this case if by reason of ignorance or mistake of (fact) (law) the defendant did not have at the time the mental state which the statute requires as

an element of the crime." "If the definition of a crime does not prescribe a culpable mental state, a culpable mental state is nevertheless required unless the definition plainly dispenses with any mental element." K.S.A. 2021 Supp. 21-5202(d).

The State charged Cary with aggravated escape from custody as a violation of K.S.A. 2018 Supp. 21-5911(b)(1)(A) (escaping while held in custody upon charge, conviction of or arrest for felony). The statute defines "'escape'" as a "failure to return to custody following temporary leave lawfully granted by: . . . a custodial official authorized to grant such leave." K.S.A. 2018 Supp. 21-5911(d)(2)(B)(iii). Though the statute on aggravated escape from custody, K.S.A. 2018 Supp. 21-5911, does not require a specific mental state, the State elected to increase its burden to prove the highest culpable mental state of specific intent. That is, the State chose to increase its burden to prove Cary intentionally failed to return to custody. "A person acts 'intentionally,' or 'with intent,' with respect to the nature of such person's conduct or to a result of such person's conduct when it is such person's conscious objective or desire to engage in the conduct or cause the result." K.S.A. 2021 Supp. 21-5202(h).

Cary argues the defense of mistake was appropriate because he was never told failing to return to the residential facility risked new criminal charges. But the record reflects Cary was, in fact, told during his orientation program he needed to return to the facility and failure to do so could lead to new criminal charges. The residential work release facility provided Cary with:

- his initial orientation program which explained the rules he was to follow;
- a handbook discussing facility rules; and
- an acknowledgment of rules and agreement which stated in bold capital letters above his signature:

8

"ANY CLIENT RELEASED TO THE CUSTODY OF SCDOC WHO WILLFULLY FAILS TO RETURN TO THE DESIGNATED PLACE OF ASSIGNMENT AT THE TIME SPECIFIED, MAY BE GUILTY OF A NEW CHARGE ([AGGRAVATED] ESCAPE OR FAIL TO RETURN) AND UPON CONVICTION, BE SUBJECT TO THE PENALTY PROVIDED IN THE KANSAS STATUTES ANNOTATED."

Cary suggests a fact question remains as to whether he intentionally failed to return to the facility. At trial, the State presented evidence Cary left the facility on March 14, 2019, carrying an extra pair of shoes, despite being given only two and a half hours' leave. Based on the evidence, the jury reasonably could conclude beyond a reasonable doubt Cary left the facility, intended not to return, and was aware of the consequences based on his orientation program and the documents he signed. Cary failed to establish the failure to give a mistake of fact jury instruction was clear error necessary for reversal. See *State v. Sayler*, 306 Kan. 1279, 1286, 404 P.3d 333 (2017) (appellate court should not reverse conviction unless it is "firmly convinced" jury would have reached different verdict had instructional error not occurred).

Even if the jury instruction on mistake of fact was properly preserved and we did not apply the clear error standard, Cary still would not prevail on appeal as the instruction would not have been factually appropriate based on the evidence. An instruction is factually appropriate if there was sufficient evidence to support the instruction when viewed in the light most favorable to the defendant. *Williams*, 303 Kan. at 598-99. The State's undisputed evidence showed Cary was provided a handbook containing the rules of the facility, he watched an orientation video explaining the same, he signed an acknowledgment of the rules, and his ISO explained the rules of the facility. The evidence suggests Cary knew he had been released from the facility to complete a task expected to take no longer than two and a half hours and thus knew when he was expected to return to the facility on the date in question. Cary did not testify to refute any of this evidence. When viewed in the light most favorable to Cary, sufficient evidence did not support an instruction on mistake of fact.

Affirmed.