NOT DESIGNATED FOR PUBLICATION

No. 118,913

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

TOHNNA JONENE THOMPSON,
*Appellant*.


MEMORANDUM OPINION

Appeal from Sherman District Court; KEVIN BERENS, judge. Opinion filed March 22, 2019. Affirmed in part, reversed in part, and remanded with directions.

*Sam Schirer*, of Kansas Appellate Defender Office, for appellant.

*Rachel L. Pickering*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before ARNOLD-BURGER, C.J., ATCHESON, J., and BURGESS, S.J.

PER CURIAM: Tohnna Jonene Thompson stole gas from Cowboy Corner Express by filling her vehicle's tank and trying to pay for the gas with the check of a deceased person, P. J. Nejdl. The owner of Cowboy Corner Express thought the check was suspicious and did not accept it. Thompson left the station without paying. She was subsequently arrested and convicted of forgery, identity theft, and theft.

On appeal, Thompson argues there was insufficient evidence to support her convictions. We find her argument unpersuasive as to the forgery and identity theft charges. But there was insufficient evidence to support her conviction for theft because of

1

the inability of the State to prove its case consistent with the narrow jury instruction the State recommended and the district court provided to the jury. So we reverse Thompson's conviction for theft.

Thompson also argues the district court erred by failing to weigh Thompson's financial situation when assessing the Board of Indigents' Defense Services (BIDS) attorney fee. The State concedes that the district court erred on this point.

FACTUAL AND PROCEDURAL HISTORY

In June 2016, Thompson entered the Cowboy Corner Express in Goodland, Kansas, to buy some snacks and gasoline that her friend, Holly Colton, had pumped into Thompson's vehicle. Before the gas was pumped into the vehicle, the owner of Cowboy Corner Express, Michael Walters, had to "authorize a pump."

Thompson pumped the gas and then entered the store to pay by check. Walters saw her fill out the check and thought the check looked suspicious. The check was linked to P. J. Nejdl's account. Walters took the check from Thompson and told her that he needed to go to the back of the store and verify the check. Walters went to the back and called Equitable Savings & Loan, the bank that issued the check. An employee with Equitable Savings & Loan told Walters that Nejdl was deceased and that the account was closed.

Walters went back to the counter but by that time Thompson had left the store and driven away. Thompson did not pay for the gas pumped into the vehicle.

Thompson claimed that when she got to the station to get gas Colton handed her the check to pay for the gas. Thompson asserts that she only put the name of the store and

2

the amount on the check. After Walters told her he needed to verify the check, she went outside and told Colton to go inside because there was something wrong with the check.

The State charged Thompson with one count of forgery, one count of identity theft, and one count of theft by deception. The jury found Thompson guilty on all counts. The court imposed a combined sentence for Thompson's convictions of 16 months' incarceration but granted probation. As part of her sentence, the district court imposed a BIDS attorney fee. Thompson appeals.

## ANALYSIS

On appeal, Thompson argues that there was insufficient evidence to support her convictions. Thompson also argues that the district court erred when it imposed a BIDS attorney fee against her.

### SUFFICIENCY OF THE EVIDENCE

*We examine our standard of review.*

> "'When sufficiency of the evidence is challenged in a criminal case, the standard of review is whether, after reviewing all the evidence in a light most favorable to the prosecution, the appellate court is convinced a rational factfinder could have found the defendant guilty beyond a reasonable doubt. Appellate courts do not reweigh evidence, resolve evidentiary conflicts, or make witness credibility determinations.' [Citation omitted.]" *State v. Chandler*, 307 Kan. 657, 668, 414 P.3d 713 (2018).

*There was sufficient evidence to support Thompson's conviction for identity theft.*

The State charged Thompson with identity theft. Under Kansas law, identity theft, in pertinent part, is obtaining, possessing, or using "any personal identifying information,

3

or document containing the same, belonging to or issued to another person with intent to . . . [d]efraud that person, or anyone else, in order to receive any benefit." K.S.A. 2018 Supp. 21-6107(a)(1). The district court instructed the jury that to find Thompson guilty of identity theft it must find "[t]hat the Defendant used personal identifying information belonging to another person."

Thompson argues that there was insufficient evidence to support a conviction that she "'used'" Nejdl's personal information. Thompson argues that the evidence showed only that she "attempted" to use Nejdl's information. She argues that she did not use Nejdl's information because "'used'" requires the information to be "'employed in *accomplishing* something.'" Thompson cites Merriam-Webster's online definition of used to support her argument. Because Walters became suspicious of the check Thompson presented he did not accept it as payment. Thompson argues this means she did not accomplish anything and so did not "use" Nejdl's information. In response, the State points to *State v. Hernandez-Carballo*, No. 109,704, 2014 WL 3630348, at *5-6 (Kan. App. 2014) (unpublished opinion), where this court held that a stated intent to defraud was sufficient evidence for the judge to convict the defendant of identity theft.

In *Hernandez-Carballo*, the police stopped the defendant for speeding and asked for the defendant's driver's license. Hernandez-Carballo gave the police two Social Security cards which contained personal identifying information which did not belong to her. Hernandez-Carballo told the police that she purchased the fake documents and planned to use them to get a job. On appeal, Hernandez-Carballo argued that there was insufficient evidence to show that she had the intent to defraud and no evidence that she used the documents to apply for a job.

This court held that there was sufficient evidence to support Hernandez-Carballo's conviction because the statute required only that she had "*the intent* to defraud someone in order to receive any benefit. The intent alone is sufficient; there is no need to actually

4

receive benefits." 2014 WL 3630348, at *6. The State argues that *Hernandez-Carballo* means that an individual may be convicted of identity theft even if the person did not actually defraud anyone.

We find Thompson's argument unpersuasive. Thompson did use Nejdl's information by presenting it to Walters to pay for the gas and snacks. Thompson's statement that she "accomplished nothing" is disingenuous. She accomplished something by offering the check as payment. It was at that point that Walters chose to call Equitable Savings & Loan to verify the check details. Thompson went further than Hernandez-Carballo who only stated that she was going to use her documents to get a job. See 2014 WL 3630348, at *1. Thompson went a step further by actually using Nejdl's check to accomplish offering the check as payment.

Neither the identity theft statute nor the jury instructions require the victim to accept the personal identifying information belonging to another person. Instead, the State had to prove that Thompson used the personal identifying information belonging to another person with the intent to defraud. See K.S.A. 2018 Supp. 21-6107(a)(1). Thompson used the personal identifying information by filling out the check and offering it as payment for gas and snacks.

When we view the evidence in a light most favorable to the State, there was sufficient evidence for a rational fact-finder to have found Thompson guilty of identity theft beyond a reasonable doubt. See *Chandler*, 307 Kan. at 668.

*There was sufficient evidence to support Thompson's conviction for forgery.*

Thompson's second argument on appeal is that there was insufficient evidence to support her conviction for forgery because Nejdl was deceased and so not a "'real person'" under the Kansas forgery statute.

5

Under Kansas law, forgery, in pertinent part, is "with intent to defraud: (1) Making, altering or endorsing any written instrument in such manner that it purports to have been made, altered or endorsed by another person, *either real or fictitious*, and if a real person without the authority of such person." (Emphasis added.) K.S.A. 2018 Supp. 21-5823(a)(1). The jury instructions required the jury to find that Thompson "made, altered or endorsed a check so it appeared to have been made by [P.J.] Nejdl, a real person, who did not authorize such."

Thompson argues that Nejdl was not a real person under the statute because a "'[p]erson' means an individual, public or private corporation, government, partnership, or unincorporated association." K.S.A. 2018 Supp. 21-5111(t). Thompson argues that the Legislature wrote the definitional statute in the present tense and thus it means a "currently existing 'individual.'"

Interpretation of a statute is a question of law over which appellate courts have unlimited review. *State v. Collins*, 303 Kan. 472, 473-74, 362 P.3d 1098 (2015). The most fundamental rule of statutory construction is that the intent of the Legislature governs if we can ascertain that intent. An appellate court must first attempt to determine legislative intent through the statutory language enacted, giving common words their ordinary meanings. *State v. Barlow*, 303 Kan. 804, 813, 368 P.3d 331 (2016).

Thompson acknowledges that this court has held that the term person, under the Kansas identity theft statute, includes a deceased individual. See *State v. Hardesty*, 42 Kan. App. 2d 431, 436, 213 P.3d 745 (2009). In *Hardesty*, officers pulled the defendant over for suspected driving under the influence (DUI) and he identified himself using his deceased brother's driver's license. The State charged and convicted him of identity theft. On appeal he argued that his deceased brother was not a "'person'" and so there was insufficient evidence to support his conviction. 42 Kan. App. 2d at 432.

6

The *Hardesty* court held that "the legislature intended to include the theft of the identity of a deceased person within the scope of the [identity theft] statute, as long as the remaining requirements of the statute are satisfied." 42 Kan. App. 2d at 436. In reaching its decision the court considered Hardesty's argument that previous Kansas caselaw held that a defendant could only be convicted of identity theft if the identification belonged to a "real person." 42 Kan. App. 2d at 434 (citing *City of Liberal v. Vargas*, 28 Kan. App. 2d 867, 868, 24 P.3d 155 [2001]). The court reasoned that the term "'real'" was used in our prior cases merely to contrast it to the term "'fictitious'" and "was not intended to distinguish between living or deceased persons." *Hardesty*, 42 Kan. App. at 435.

To distinguish *Hardesty*, Thompson points out that the *Hardesty* court did not consider the statutory definition of the term "person" in K.S.A. 2009 Supp. 21-3110(15) (now K.S.A. 2018 Supp. 21-5111[t]), therefore *Hardesty* was wrongly decided. But, the statutory definition of a person as "an individual" does nothing to detract from the *Hardesty* court's opinion that the use of the term "real" was solely meant as a way to distinguish it from fictitious. We find such reasoning persuasive. Moreover, the plain meaning of the words "an individual" includes people currently alive and deceased. When a person dies, the person does not lose his or her identity as an individual. Instead, the person is just dead—no more, no less. This interpretation aligns with this court's earlier decision in *Hardesty*, 42 Kan. App. 2d at 435-36. Moreover, the forgery statute contains just such a distinction. The statute clarifies that a person can be a real or a fictitious person. K.S.A. 2018 Supp. 21-5823(a).

But Thompson goes on to argue that even if a deceased person is a person or an individual as contemplated by the statute, the deceased person is not a "real" person as required by the statute. Thompson argues that a real person must "'occur[] or exist[] in actuality." But this argument too is unpersuasive. Real is defined as "existing or happening as or in fact; actual, true, etc.; not merely seeming, pretended, imagined, fictitious, nominal, or ostensible." Webster's New World College Dictionary 1209 (5th

7

ed. 2014). Again, defining real in part by what it is not—fictitious or imagined. A person does not cease to be real simply because the person is deceased. As an example, Dr. Martin Luther King Jr. died in 1968; he does not currently occur or exist in actuality. But Dr. Martin Luther King Jr. was a real person, not a fictitious person. Something or someone does not suddenly lose status as a real thing or person because of the passage of time and death.

Because Nejdl remained a real person and an individual after her death, we find that there was sufficient evidence for a reasonable fact-finder to find Thompson guilty of forgery beyond a reasonable doubt. See *Chandler*, 307 Kan. at 668.

*There was insufficient evidence to support Thompson's conviction for theft.*

Thompson next argues there was insufficient evidence to support her conviction for theft because she was authorized to pump gas into her vehicle.

Interpretation of a statute is a question of law over which appellate courts have unlimited review. *Collins*, 303 Kan. at 473-74. The most fundamental rule of statutory construction is that the intent of the Legislature governs if we can determine that intent. An appellate court must first attempt to learn legislative intent through the statutory language enacted, giving common words their ordinary meanings. *Barlow*, 303 Kan. at 813.

The State charged Thompson with theft for obtaining or exerting unauthorized control over fuel owned by Cowboy Corner Express, in violation of K.S.A. 2015 Supp. 21-5801(a)(1). We pause to note that there appears to have been a lack of attention to the charging document and the instructions that ultimately lead us to the result we have reached on the sufficiency of the evidence on this charge. The State filed a charging document that lists 21-5801(a)(2) (theft by deception) as the charge. But the language the

8

State used in the charging document matches 21-5801(a)(1) (theft by *obtaining or exerting* unauthorized control over property). Exacerbating the confusion, the State submitted proposed jury instructions, with which Thompson agreed, that omitted the term "exerting" unauthorized control and simply required the jury to find Thompson "obtained" unauthorized control over the property. The district court accepted the agreed-upon instruction and the jury was instructed that to find Thompson guilty of theft it must find, in part, Thompson "obtained unauthorized control over the gasoline." So, the jury instruction omitted the word "exert" which is present in the corresponding statute. See K.S.A. 2015 Supp. 21-5801(a)(1). The State was required to present evidence that established the elements of the crime as described by the jury instruction, see *State v. Robinson*, 27 Kan. App. 2d 724, Syl. ¶ 7, 8 P.3d 51 (2000), which leads us to whether the State proved beyond a reasonable doubt that Thompson "obtained" unauthorized control over property.

Thompson argues that the State did not prove that she obtained unauthorized control over the gasoline because Walters authorized someone to pump the gasoline into Thompson's vehicle. At trial, Walters testified that he "authorize[d] a pump" to pump gasoline into Thompson's vehicle. In response, the State argues that while Cowboy Corner Express authorized Thompson to possess the gasoline initially, she was not authorized to leave with the gasoline without paying. The State argues that Thompson leaving without paying "constituted the exertion of unauthorized control over the gas."

To support its argument, the State points to *State v. Plummer*, 295 Kan. 156, 166, 283 P.3d 202 (2012), where the Kansas Supreme Court opined that some stores authorize customers to possess merchandise while shopping but that authorization does not extend to leaving the store without paying. In *Plummer*, the defendant took merchandise from a Target store and passed the registers without paying. A store security officer stopped Plummer before he could leave the store and Plummer reacted by swinging at the officer. The State charged Plummer with aggravated robbery and at trial requested a lesser

9

included instruction of theft. The court held that the lesser included instruction was appropriate because Plummer had completed a theft before he used force on the security officer. 295 Kan. at 168. As the court explained, Plummer's actions of removing and concealing items in an effort to remove them from the store without paying "constitute the exertion of *unauthorized* control over the property." 295 Kan. at 166.

The *Plummer* court also discussed its earlier decision of *State v. Dean*, 250 Kan. 257, 260, 824 P.2d 978 (1992), where the court dealt with the taking of gasoline from a service station. In *Dean*, the defendant ordered gasoline and a station attendant pumped the gasoline. After pumping the gasoline, Dean said he had no money and motioned as if he had a gun. Dean then drove away from the station. The *Plummer* court noted that the "station owner intentionally and voluntarily pumped the gasoline into Dean's automobile, so that Dean was authorized to possess the property at that time, *i.e.*, Dean had not obtained *unauthorized* control over the property as required to complete a theft." 295 Kan. at 167. The taking was not accomplished until "Dean threatened the station owner, rather than hand him 3 dollars." 295 Kan. at 167.

Both *Plummer* and *Dean* support the State's assertion that Thompson's acts "constituted the exertion of unauthorized control over the gas." But the State was required to prove that Thompson "obtained unauthorized control over the gasoline." See *Robinson*, 27 Kan. App. 2d 724, Syl. ¶ 7. "'Obtain' means to bring about a transfer of interest in or possession of property, whether to the offender or to another." K.S.A. 2018 Supp. 21-5111(q).

Here there is no evidence that Thompson obtained the gasoline without authorization. Possession of the gasoline was transferred with authority from Cowboy Corner Express to Thompson after Walters authorized the pump to disburse the gasoline. There would be sufficient evidence to find that Thompson *exerted* unauthorized control over the gasoline because she left the station without paying. The Kansas Legislature

10

defined the phrase "'[o]btains or exerts control'" as "include[ing], but . . . not limited to, the taking, carrying away, sale, conveyance, transfer of title to, interest in, or possession of property." K.S.A. 2018 Supp. 21-5111(r). But the court instructed the jury that it must find Thompson "*obtained* unauthorized control over the gasoline." (Emphasis added.) Again, the State had to present evidence that established the elements of the crime as described by the jury instruction. See *Robinson*, 27 Kan. App. 2d 724, Syl. ¶ 7. If the jury instruction had included the "or exerting" language that appears in the theft statute, or if the State had elected to charge Thompson with the more specific crime of theft for dispensing fuel and leaving without paying, as set out in K.S.A. 2015 Supp. 21-5801(a)(5), the circumstances would be different. But that is not the case. There is insufficient evidence to support Thompson's conviction for theft by obtaining gasoline without authorization. So we must reverse her conviction for theft. We note that due to the fact that her sentence on the theft charge was ordered to run concurrent with her sentences on the other two charges, this holding has no impact on Thompson's sentence.

IMPOSITION OF A BIDS ATTORNEY FEE

Thompson's final argument on appeal is that the district court erred by assessing a BIDS attorney fee without obtaining required information about the burden the fee would place on Thompson. The State concedes that the district court erred. And we agree.

Under K.S.A. 22-4513(b) the district court "shall take account of the financial resources of the defendant and the nature of the burden that payment of such sum will impose." Sentencing courts must consider the financial resources of the defendant and the burden that payment will impose, *explicitly* stating on the record how the court has weighed those factors in arriving at its decision. *State v. Robinson*, 281 Kan. 538, 546, 132 P.3d 934 (2006). The remedy for a sentencing court's failure to make explicit findings is to remand to the sentencing court for such findings. 281 Kan. at 548.

11

Here, the district court did not explicitly state on the record how Thompson's financial situation weighed on the court's decision. In fact, the record suggests that the district court was likely unaware of Thompson's financial situation because Thompson's counsel did not discuss it.

Because the district court did not explicitly state on the record how Thompson's financial situation factored into the court's decision, this court must remand the case so the district court can make those explicit findings. See 281 Kan. at 548.

Affirmed in part, reversed in part, and remanded with directions.